Let's get started with our argument first in In re Hain Celestial Group Securities Litigation Number 20-15-17. Ms. Fox? Good morning, Your Honors, and may it please the Court, Christine Fox from Labaton, Cicero, on behalf of the plaintiff's appellants. Before you on appeal, we have a securities fraud class action against Hain Celestial and certain of its officers. The district court's order dismissing plaintiff's second amended complaint should be reversed. At the core of this appeal is whether the district court erred in finding that defendants had no duty to disclose the source of the company's purported record revenues. Hain described in its press releases and earnings calls that its record results were due to the, quote, expanded distribution, deeper penetration in key accounts, and even strong consistent consumer demand. In reality, Hain's record results were only possible with the provision of increasingly aggressive sales concessions that Hain offered to its top distributors to mask declining demand. These sales concessions totaling tens of— Was demand declining or was it simply not—I don't mean simply—or was it not rising to the extent that the reports would have indicated? Your Honor, the demand was declining due to the entrance into the organic food and product market of lots of other players. The sales concessions totaling tens of millions of dollars included cash incentives, reimbursements, and credits for inventory that the distributors could not sell through, and significant discounts up to 25 percent. And as a cherry on top of these very generous offers, Hain offered its U.S. distributors the right to return unsold product. There is no dispute that the defendants engaged in this behavior during the class period. Hain admitted to it— Engaged in what? Engaged in this behavior, the provision of loading its distributors with excess inventory. I have a little bit of a problem with that. As I understand your argument, you're saying the district court viewed Hain's actions in—what's it called—what's the phrase—stuffing, or what is the phrase? We call it loading, or it's also called channel stuffing. Channel stuffing, okay. The district court said that's not illegal, therefore there was no reason to report it. I understand your argument, the substance of your argument to be it doesn't matter whether it's illegal or not. The issue is for the federal securities laws, were they making false statements? Was disclosure of the channel stuffing necessary in order to make their other statements about strong demand, when demand was really weak, the channel stuffing was required to be disclosed in order to make those other statements not misleading? That those statements were misleading, and that it's irrelevant whether the channel stuffing was illegal conduct or not illegal conduct. And that seems to me to be a very strong argument, which I will want to hear your adversary's answer to. But you're now saying that the channel stuffing was illegal behavior, and it seems to me that you're digressing from your strong point into a much weaker one by saying that. I don't know whether it's illegal or not. It's illegal to offer customers incentives to buy? No, Your Honor. I think perhaps the court has misunderstood. I am advocating the argument that you have classified as the stronger argument. Okay, because I thought you were saying, I thought you just said when I asked you what did you say, that they were engaging in misbehavior when they were offering their clients these rebates and the opportunity to return the product and so on. No, Your Honor. I was saying that they had admitted, the company has admitted and the SEC has found that these provision of sales concessions were going on and they were going on in material amounts. But the misbehavior was the failure to disclose something that was necessary to make other statements that they were making. They were saying strong demand, strong demand. And you're saying those statements are misleading unless they are accompanied by an acknowledgment, an explanation that the high sales figures were attributable to offering unsustainable, well whether they were sustainable or not, offering these big concessions. Yes, Your Honor. That is precisely the argument that plaintiffs are advocating and you may have said it even better than I did. What are the specific statements that you're claiming were false in light of what you just discussed with Judge LaValle? Sure, Your Honor. The statements are statements about the impetus or the sources of the revenue. Defendants claim... I see on page 40 of your brief there's a couple things in bold. I'm looking for specific language of the disclosures that you are alleging were rendered false by the nondisclosure of the alleged channel stuffing. Yes, Your Honor. The false statements are the ones that are bold and italicized in the second amended complaint. Okay. What's the worst one or two? Strong, consistent customer demand. So was that false is what you're saying? There was not, in fact, strong, consistent customer demand? Precisely, Your Honor. It was loading distributors with more inventory than they could sell through. Demand was not strong. It was weak, which is why Hain was forced to give increasingly large concessions as time went on. The distributors didn't need the inventory. What percentage of the sales were attributable to, just roughly over the time period, attributable to these incentives? The U.S. largest distributor is a distributor by the name of UNFI, and they comprised approximately 33% of U.S. sales on any given quarter. And of that 33%, then what percent of that was due to sort of late in the quarter, end of quarter incentive sales? The SEC has quantified it as approximately 15% of just for that one particular distributor, and there are multiple U.S. distributors, but just for UNFI, that was 15% of net sales on a quarterly basis. Okay. So does 15% of 33% mean that overall it's not strong? Overall the... I'm sorry, Your Honor. I'm just trying to understand how, based on the numbers that you're giving me, how that translates into strong sales being false. Sure, Your Honor. I gave you the example for one distributor. The SEC also looked at a second distributor, which they didn't name in their order, also comprising a substantial part of net sales. At this point, Your Honor, without discovery, we don't actually have the precise amount of net sales that were due to solely the concessions. But you're not arguing, you're not assuming that UNFI was the only customer to whom these incentives were being offered. Correct, Your Honor, which is what I was trying to... I mean, Judge Clark said 15% of 33%, but your allegation is not that it was only UNFI that they were offering these incentives broadly to their customers. To their distributors, to their U.S. distributors, yes, and the U.S. market made up... Is it your position that you don't know who they are or what the numbers are without discovery? Yes, Your Honor. Besides what is alleged in our complaint, the CWs, who are former HANE employees, provided some examples that included UNFI and another distributor. I understand that, but you want to go forward with discovery to find out who those people were, who those customers were, and what the numbers were. Is that what you're saying? Yes, Your Honor. Okay, thank you. You've reserved two minutes for rebuttal. Thank you, Your Honor. Mr. Hillerbrecht. You can structure your argument any way you would like, but in the course of it, I hope you'll view the question that I asked before as a question addressed to you. That's exactly where I intended to begin, Your Honor. May it please the Court, my name is John Hillerbrecht. I'm sorry, more into the microphone, please. I'm having trouble hearing you. None of us are advantaged by these masks in communicating what we have to say. Apologies. May it please the Court, my name is... Can that be elevated? Can that go up? It's as high as it can go. Oh, okay. I'll bend over. Excuse me. We represent the defendants of Appalese, and we represented them below. There were a couple of things that counsel said in response to Your Honor's questions, Judge LaValle. One is that the practices at issue were undertaken to, quote, mask declining demand. But as a matter of fact, even taking into account the minor immaterial revisions to the financial statements that are set forth in the record, demand increased, and that's at Joint Appendix 371 to 79, over these years. She also asserted that the problem here is that they sent products to the distributors that they, quote, could not sell through, but that's refuted by their own complaint and by the SEC order, which was incorporated into the complaint by then, which makes clear, as Judge Stach found, that 99% of the sales to the distributors at issue, in fact, did sell through, and that the return rate was approximately 1% or thereabouts, which is perfectly standard. What I'd like to do is turn to two aspects of this. I mean, isn't the allegation by the plaintiffs that those products were sold to the distributors during that last month of the quarter at very much reduced prices? The allegation is that the company engaged in discounts and other sales promotions to encourage those sales. So you're saying that they sold through. If they were sold at considerable substantial discounts, they could be resold at a profit without charging what would have been charged if they had not been sold at substantial discounts. Which is the nature, Your Honor, of any product that's sold pursuant to a discount or a sale or another promotion. Right. And this Court has repeatedly made clear that those kinds of discounts and promotions My question doesn't imply that there was anything wrong with offering them at a discount. It seems to me the question is simply, do the statements about strong demand, do they become misleading if there's a failure to include the fact about the selling at substantially discounted prices and on unusually favorable terms during that last month? And let me address that directly. I think there's two aspects of the case, Your Honor, that go directly to that. First, as we just discussed, one of the things they relied upon and that counsel just mentioned up here is the absolute right to return that was alleged to exist in the complaint. According to the complaint, these were really consignment sales and the customers had, quote, no obligation to pay for the shipments. And then the customer would allegedly, quote, return the excess inventory in the next quarter, end quote, because they never really wanted it. The second kind of linchpin of their complaint is the aspect of it that Your Honor is pointing to, Judge Revolf, which is they had this absolute right of return and they failed to disclose the company's use of, quote, discounts, cash incentives, extended payment terms, and other aspects. As appellants put it to the court, and as Judge LaValle kind of summarized a minute ago, and this is in their reply brief at page 9, had defendants simply told the market that they used these tactics to generate sales, there would be no deception and no fraud. So those are kind of the two linchpins, this right of return and unwanted products allegation and the failure to disclose the discounts. Both of those wrongs I submit to the panel are fatally undermined by the complaint and the documents incorporated into it. As to the right of return, Judge Splatt correctly held that the conclusory assertion that there was such a return were not supported in the complaint. There's no such right to return present here. After a thorough review by outside auditors and an independent law firm, the company concluded there was no intentional wrongdoing and reaffirmed that its historical accounting policy for these distributors was accurate and appropriate. Similarly, after its own thorough investigation, the SEC concluded that the sales practices appellants focus on were entirely proper and that the vast majority of products did sell through, as I've already said. The SEC order also noted there was no financial restatement here. It's not necessary. To what extent do we defer to the SEC? I mean, if it was unappealed to us from the SEC, it would be different. But how does that fit in? It's a fair point, Your Honor. We cite the Minaldi case and other cases that make it clear that if the defendant chooses to incorporate and rely on the SEC order, the court can credit the findings of the SEC order and to the extent those findings So it's part of the pleading. It's part of the pleading. Exactly correct, Your Honor. And to the extent those findings exonerate the company, as they do here, as Jeff Spatz found, the court can rely on that. So standing alone, that's one of the grounds for exoneration and dismissal of the complaint. The claim that these were not real orders, they were not real orders, they were consignment orders. Just on that, the SEC's investigation had to do with the alleged channel stuffing itself, correct? Not the disclosure of those incentive practices. That is correct, Your Honor. But we think it's very significant that they found there was no wrongdoing. They found no restatement was necessary. And they found that the gap violations, the minor gap violations, had no effect on the validity of the underlying transactions. In other words, the premise of the claim here is that the sales were not really sales. They were shams. They were really consignments. That is not correct. And the documents incorporated into the complaint make that abundantly clear. Both the 10K that's incorporated in the complaint and the SEC order. I don't understand that to be the premise of the complaint. I understand the main premise of the complaint to be that certain statements were rendered false and misleading by the failure to disclose other things. Not that the sales were a sham. I mean, the complaint may have used some hyperbole of language saying these sales were a sham because there were conditions offered. But that's not what matters. What matters is whether the statements about strong demand were rendered misleading by the failure to tell other facts about the circumstances under which the sales occurred. Respectfully, Your Honor, I think they both matter. I agree with you 100 percent that the second part matters as well. And as to that second part, the argument that the failure to disclose the discounts and sales suffers also from a fatal flaw because appellants concede, as they must, that throughout the class period, Hain did disclose in its public filings that it tried to increase demand by engaging in, quote, promotion incentives, trade discounts and promotions, cash discounts, price discounts, end quote, among other incentives. They set forth these disclosures in their complaint at multiple points, and Judge Spatz's opinion quotes those disclosures at page 24 of the special appendix. Those disclosures made clear that, quote, sales incentives Or did they, did they, did those disclosures tell anything about the size of the incentives being offered? They did not, Your Honor. But the investing public was on notice that, as in, I submit, any major retail company, demand is influenced by price, and retailers and wholesalers and manufacturers engage in discounts and promotion activities all the time. And the disclosures that are cited in Judge Spatz's opinion make this quite clear. So there's nothing misleading about the statement that demand was strong because it is true. And it's not made misleading because they were offering discounts and other promotions because those were disclosed. And the fact that 99 percent of the products that were sold, ultimately sold to consumers, underscores the reasons why the SEC, the independent auditors, and the outside law firm and everybody else who investigated this, concluded that there was no improper conduct here, which is also what Judge Spatz concluded. And I see my time is up. Thank you, counsel. Thank you. Ms. Fox, you have two minutes remaining for rebuttal. Thank you, Your Honors. I have a few responses to my adversary's argument. First of all, he argues that the restatement was not material. Although many of the misstatements were quantitatively small, they hid Haines' consistent failure to meet analyst expectations for six straight quarters. Moreover, issues of materiality are not appropriate for resolution on a motion to dismiss. My adversary also argues that the SEC order exonerated Haines. In fact, this is not true. Defendant's practices were made crystal clear in the SEC order. Moreover, the narrow exculpatory finding in the SEC order that the vast majority of products eventually sold through to retailers is not only incorrect, it obfuscates that plaintiff's claims do not rise and fall on whether Haines offered its distributors an absolute right of return. Moreover, my adversary cites language from the SEC order referencing the fact that the vast majority of product eventually sold through, but there is nothing in the SEC order about 99% of products selling through. The SEC order, in fact, does not quantify the vast majority language. Finally, I understand my adversary to be making an argument regarding truth on the market, that, in fact, Haines did disclose the very practices we say were omitted. But, number one, the language in the complaint referring to promotional activity and trade promotions does not disclose that Haines used these practices to sell so much product. Further, a truth on the market defense is also not appropriate for resolution on a motion to dismiss. Finally, as Your Honors correctly point out, this is not a case about the propriety of channel stuffing. This is a case about the failure to disclose the company's reliance on such practices in the face of language going specifically to the source of the record results. Thank you, Your Honors. Thank you, Counsel. We'll take the case under advisement.